1  DANIEL S. MASON (No. 54046)
   CHRISTOPHER T. MICHELETTI (No. 136446)
2  ERIC W. BUETZOW (No. 253803)
   ZELLE, HOFMANN, VOELBEL MASON & GETTE, LLP
3  44 Montgomery Street, Suite 3400
   San Francisco, CA 94104
4  Telephone:  (415) 693-0700
   Facsimile:  (415) 693-0770
5  E-mail:  dmason@zelle.com
   E-mail:  cmicheletti@zelle.com
6  E-mail:  ebuetzow@zelle.com

7  Attorneys for Plaintiff

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12  WILSON & COUSINS DIVISION OF          )  Case No. _____
    PALAMAR INDUSTRIES, INC.,             )
13                                        )  MEMORANDUM OF POINTS AND
                      Plaintiff,          )  AUTHORITIES IN SUPPORT OF
14                                        )  PLAINTIFF'S APPLICATION FOR
              v.                          )  TEMPORARY RESTRAINING ORDER
15                                        )  AND ORDER TO SHOW CAUSE RE
    T. CHRISTY ENTERPRISES, INC.,         )  PRELIMINARY INJUNCTION
16                                        )
                      Defendant.          )
17                                        )

18

19

20

21

22

23

24

25

26

27

28  _____
      MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
     TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTS ..................................................................................................................... 2

ARGUMENT ........................................................................................................... 8

I.  PLAINTIFF WILSON & COUNSINS SATISFIES THE
    REQUIREMENTS FOR A PRELIMINARY INJUNCTION ........................ 8

    A.  THE PRELIMINARY INJUNCTION STANDARD ................................. 8

    B.  PLAINTIFF WILSON & COUSINS IS LIKELY TO SUCCEED ON THE
        MERITS OF ITS LANHAM ACT CLAIMS ......................................... 9

        1.  Plaintiff Wilson & Cousins Has a Valid, Protectable
            Trademark, as well as Protectable Trade Dress ................... 10

            a.  Plaintiff's Firefighter Helmet Mark is a Protected
                Trademark ............................................................. 10

                i.   Plaintiff's Helmet Mark is Inherently
                     Distinctive as a Suggestive Mark ................... 11

                ii.  Plaintiff's Helmet Mark is Non-
                     Functional ....................................................... 12

            b.  Plaintiff's Trade Dress is Protected ......................... 12

                i.   Plaintiff's Trade Dress is Inherently
                     Distinctive ...................................................... 13

                ii.  Plaintiff's Trade Dress is Non-
                     Functional ....................................................... 14

        2.  A Likelihood of Confusion Exists as a Result of
            Defendant's Sale of Knock-Off Products and Use of
            Plaintiff Wilson & Cousins' Marks .................................... 15

            a.  Defendant Christy's Sale of Infringing Knock-Off
                Valves Causes Consumer Confusion ......................... 16

            b.  Defendant Christy's Use of Plaintiff's Marks to
                "Pass Off" Counterfeit Valves Causes a Likelihood
                of Confusion .......................................................... 22

    C.  IN THE ALTERNATIVE, PLAINTIFF WILSON & COUSINS HAS RAISED
        SERIOUS QUESTIONS ON THE MERITS AND THE BALANCE OF
        HARDSHIPS TIPS SHARPLY IN ITS FAVOR ..................................... 23

II.  SCOPE OF THE INJUNCTION .............................................................. 24

CONCLUSION ...................................................................................................... 25

-i-

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*American Int.'l Group, Inc. v. American Int.'l Bank,*
    926 F.2d 829 (9th Cir. 1991)................................................................... 15

4

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)............................................................... 16, 21

5

*Apple Computer, Inc. v. Formula Int.'l, Inc.,*
    725 F.2d 521 (9th Cir. 1984)................................................................... 16

6

7

*Au-tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
    457 F.3d 1062 (9th Cir. 2006)............................................................. 20, 22

8

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999)........................................................... passim

9

10

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
    251 F.3d 1252 (9th Cir. 2001)............................................................. 12, 14

11

*Duncan McIntosh Co. Inc. v. Newport Dunes Marina LLC,*
    324 F. Supp. 2d 1078 (C.D. Cal. 2004)..................................................... 15

12

13

*Earth Island Inst. v. Unites States Forest Serv.,*
    351 F.3d 1291 (9th Cir. 2003)................................................................... 8

14

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000)........................................................... passim

15

16

*H.O. Sports, Inc. v. Earth & Ocean Sports, Inc.,*
    No. C00-1846P, 2001 WL 514314 at *1 (W.D. Wash. Jan. 12, 2001)........................ 22, 23

17

*Honor Plastic Indus. Co. Ltd. v. Lollicup USA, Inc.,*
    462 F. Supp. 2d 1122 (E.D. Cal. 2006)....................................................... 9

18

19

*Lamothe v. Atlantic Recording Corp.,*
    847 F.2d 1403 (9th Cir. 1988)............................................................. 10, 22

20

*LeSportsac, Inc. v. K Mart Corp.,*
    754 F.2d 71 (2d Cir. 1985)................................................................. 14, 15

21

22

*Levi Strauss & Co. v. Shilon,*
    121 F.3d 1309 (9th Cir. 1997)................................................................... 9

23

*Lisa Frank, Inc. v. Impact Intern., Inc.,*
    799 F.Supp. 980 (D. Ariz. 1992)............................................................. 14

24

25

*Mattel, Inc. v Walking Mountain Prods.,*
    353 F.3d 792 (9th. Cir. 2003)............................................................. 13, 14

26

*Newsguy, Inc. v. Yomtobian,*
    No. C 04-0811 CRB, 2004 WL 2944051, at *1 (N.D. Cal. Dec. 20, 2004) ........................ 18

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

*Nova Wines, Inc. v. Alder Fels Winery LLC,*
 467 F. Supp. 2d 965 (N.D. Cal. 2006) ...................................... passim

*Nutri/System, Inc.v. Con-Stan Indus., Inc.,*
 809 F.2d 601 (9th Cir. 1987)......................................................... 15

*Official Airline Guides, Inc. v. Goss,*
 6 F.3d 1385 (9th. Cir. 1993).......................................................... 20

*Qualitex Co. v. Jacobson Prods. Co., Inc,*
 514 U.S. 159 (1995) ............................................................... 12, 14

*SMC Promotions, Inc. v. SMC Promotions,*
 355 F. Supp. 2d 1127 (C.D. Cal. 2005)...................................... 10, 20

*Sonista, Inc. v. Hsieh,*
 348 F. Supp. 2d 1089 (N.D. Cal. 2004) ........................................... 9

*Sony Computer Entertainment America Inc. v. Gamemasters,*
 87 F. Supp. 2d 976 (N.D. Cal. 1999) ............................................. 16

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,*
 932 F.2d 1113 (5th Cir. 1991)....................................................... 14

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
 505 U.S. 763 (1992) .............................................................. passim

*Vision Sports, Inc. v. Melville Corp.,*
 888 F.2d 609 (9th Cir. 1989)......................................................... 12


**Federal Statutes**

15 U.S.C. § 1116(a)...................................................................... 8

15 U.S.C. § 1125 ........................................................................ 11

15 U.S.C. § 1125(a)(1) (2006) ......................................................... 9


**State Rules**

Federal Rule of Civil Procedure 65 ................................................. 1


**Treatises**

Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (2007) .......... passim

1       **INTRODUCTION**

2              This Memorandum of Points and Authorities is submitted in support of Plaintiff

3       Wilson & Cousins Division of Palamar Industries, Inc.'s ("Wilson & Cousins") application

4       for a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil

5       Procedure 65.  It is supported by the Complaint filed in this action and the Declaration of

6       Jeffrey Saunders filed in support of this application.  Wilson & Cousins seeks a temporary

7       restraining order and preliminary injunction prohibiting Defendant T. Christy Enterprises, Inc.

8       ("Christy") from (1) selling or distributing "knock-off" Wilson & Cousins valves and nozzles,

9       and (2) displaying or depicting Wilson & Cousins' trademarks or trade dress in its catalogs,

10      on its website, or in any advertising or promotional materials.

11             Wilson & Cousins is a fire protection equipment manufacturer.  Christy is a distributor

12      of waterworks equipment, including fire protection equipment.  Christy currently depicts

13      Wilson & Cousins' products and trademarks in its on-line catalogs, and does so without

14      Wilson and Cousins' authorization.  Moreover, when that product is ordered, Christy does not

15      ship Wilson & Cousins product; rather, it ships a "knock-off" product which closely mimics

16      the design of Wilson & Cousins' product, and does so in an effort to pass them off as such.

17      This conduct must be stopped.  Wilson & Cousins' valves and nozzles are used in fire

18      protection equipment installed in commercial and other buildings; they are therefore critically

19      important to the protection of life and property.  Contractors or others who purchase or install

20      the Christy "knock-off" product are not receiving genuine Wilson & Cousins' products, and

21      may well be purchasing and installing substandard fire protection equipment.  The irreparable

22      to harm to Wilson & Cousins' longstanding reputation in this industry that will result from

23      this conduct, as well as the related potential danger to life and property, fully justify the

24      injunctive relief requested herein.  A proposed order is submitted with this application, and

25      Plaintiff is prepared and willing to post a surety bond in the amount required by the Court.

26

27

28                                          -1-

1

## FACTS

2  **Wilson & Cousins' Is A Longstanding Manufacturer of Fire Protection**

3  **Equipment**

4          Plaintiff Wilson & Cousins is a manufacturer of interior fire protection equipment.

5  (Declaration of Jeffrey Saunders in Support of Application for Temporary Restraining Order

6  and Order to Show Cause Re: Preliminary Injunction (hereinafter "Saunders Decl."), ¶ 3.)

7  Wilson & Cousins manufactures a full range of standpipe valves, cabinets and accessories,

8  including fire department connections, adapters, hose racks, hose reels, pressure reducing

9  valves, brass and polycarbonate nozzles, hydrant gate valves and check valves.  It sells fire

10  protection equipment products throughout North America, including the U.S. and Canada.

11  (Saunders Decl., ¶ 3.)

12          Wilson & Cousins first started manufacturing and selling fire protection products in

13  1881, has done so continuously since then, and now has 126 years of manufacturing

14  experience in the fire protection equipment industry.  (Saunders Decl., ¶ 4.)  As such, it has

15  built and maintained a reputation in the U.S. and Canada as a provider of high quality fire

16  protection equipment products. Wilson & Cousins sells its fire protection equipment products

17  to distributors, who in turn sell the products to builders, contractors, plumbing specialists and

18  others that specify, purchase and/or install fire protection equipment in all types of buildings

19  and structures.  (Saunders Decl., ¶ 4.)  Distributors, builders and contractors have come to rely

20  upon Wilson & Cousins' reputation for the design and manufacture of high quality, safe and

21  dependable fire protection equipment. (Saunders Decl., ¶ 5.)

22  **Wilson & Cousins' Trademarks and Trade Dress**

23          Wilson & Cousins uses a number of marks and logos in connection with the

24  advertising, promotion and sale of its fire protection equipment.  (Saunders Decl., ¶ 6.)  It is

25  the owner of marks registered with the Canadian Intellectual Property Office ("CIPO") and

26  additional marks for which trademark applications have been filed in the U.S. and Canada

27  with the U.S. Patent & Trademark Office ("USPTO") and CIPO, respectively.  The marks

28  applied-for include the WILSON & COUSINS mark, the WC & Design Mark (also referred

1    to below as the W&C Helmet Mark), and the WILSON & COUSINS & Design Mark (*See*

2    Saunders Decl., ¶ 6, Ex. 1.)

3           Wilson & Cousins advertises and promotes its products with these marks on the

4    internet in its web site, www.wilsonandcousins.com, and also in fire protection trade

5    magazines such as Sprinkler Quarterly, Sprinkler Age, CASA (Canadian Automatic Sprinkler

6    Association) and FPC (Fire Protection Contractor). (Saunders Decl., ¶ 7.)

7           One of Wilson & Cousins's marks is a firefighter helmet with stylized letters W and C

8    (hereinafter the "W&C Helmet Mark"). (Saunders Decl., ¶ 8, Ex. 2). Wilson & Cousins first

9    used this mark in the 1980s, and first used it on fire equipment products sold in the U.S. by no

10   later than 1998. (Saunders Decl., ¶ 8.) Many of Wilson & Cousins' fire protection products

11   prominently feature the W&C Helmet Mark. Since 1998, that mark has been placed on fire

12   hose nozzles, fire safety valves, fire hose racks and reels, fire department connections, fire

13   hose and extinguisher cabinets, fire-equipment related wrenches, adapters, plugs, caps and

14   valves. (Saunders Decl., ¶ 8.) Since 1998, Wilson & Cousins has manufactured and sold in

15   the U.S. over 1,000,000 items featuring the W&C Helmet Mark. Wilson & Cousins has had

16   exclusive use the W&C Helmet Mark on fire protection equipment in the U.S. since 1998;

17   and, it is a unique mark in the fire protection equipment industry. (Saunders Decl., ¶ 9.)

18   Both distributors and those directly involved in the installation of fire protection equipment

19   have come to rely upon and recognize the W&C Helmet Mark as symbolizing Wilson &

20   Cousins and its reputation for the design and manufacture of high quality, safe and

21   dependable fire protection equipment. (Saunders Decl., ¶ 9.)

22           **Wilson & Cousins Products Feature Numerous Industry Certifications**

23           Wilson & Cousins also devotes significant efforts to obtaining industry certifications

24   from product safety testing and certification organizations. (Saunders Decl., ¶ 11.) One such

25   organization is Underwriters' Laboratories Inc. ("UL") and Underwriters' Laboratories of

26   Canada ("ULC"), which develops standards and test procedures for products, materials,

27   components, assemblies, tools and equipment, chiefly dealing with product safety. (Saunders

28   Decl., ¶¶ 11-12.) ULC is the Canadian counterpart to UL. (Saunders Decl., ¶ 12.) UL

1   evaluates products, components, materials and systems for compliance with specific

2   requirements, and permits acceptable products to carry a UL certification mark, as long as

3   they remain compliant with the standards. (Saunders Decl., ¶ 12.)

4          UL certifications are of critical importance and are necessary to compete and succeed

5   in the fire protection equipment industry.  UL product certifications are frequently required

6   for fire protection equipment in contract specifications, for safety reasons, and for insurance

7   requirements. (Saunders Decl., ¶ 13.)  All Wilson & Cousins products, where required, are

8   listed and approved by UL and FM.  Large distributors are generally unwilling to carry a

9   product without UL certification, and the sale or use of non-certified fire protection

10  equipment may invalidate insurance coverage and expose one to liabilities.  Local

11  jurisdictional authorities, such as building, electrical and fire inspectors, often require or are

12  reluctant to accept fire protection products for installation in a building unless it carries a

13  recognized third-party compliance mark such as the UL Mark. (Saunders Decl., ¶ 13.)

14         Wilson & Cousins goes to great efforts and considerable expenditures to ensure that its

15  products remain UL compliant and meet certain safety standards.  (Saunders Decl., ¶ 15.)

16  Each individual UL Listed product unit manufactured by Wilson & Cousins is individually

17  tested at its facilities in Ontario, Canada in order to ensure that it meets the UL and other

18  appropriate safety and quality standards.  (Saunders Decl., ¶ 15.)

19  **Wilson & Cousins Check Valve and Other Products At Issue Herein**

20         One product of Wilson & Cousins that is "UL Listed" is the Wilson and Cousins

21  IE144 series check valve product. (Saunders Decl., ¶ 16.)  A check valve is a valve that

22  normally allows fluid to flow through it in only one direction. (Saunders Decl., ¶ 16.)  Check

23  valves are two-port valves, meaning they have two openings in the body, one for fluid to enter

24  and the other for fluid to leave. (Saunders Decl., ¶ 16.)  This product series first obtained UL

25  Listing in July of 2003. (Saunders Decl., ¶ 16, Ex. 5). By obtaining this certification, Wilson

26  & Cousins is authorized to display a UL and ULC "Listing Mark," which is comprised of the

27  following four elements: The "UL" and/or "ULC" mark, the term "LISTED", the product

28  identity (*i.e.*, "Check Valve"), and the unique product control number assigned by UL (*i.e.*,

1   "27GH"). (Saunders Decl., ¶ 16.)   The UL control number for the Wilson and Cousins check

2   valve is unique to Wilson & Cousins' check valve product, and cannot be used with other

3   manufacturers' product. (Saunders Decl., ¶ 16.)

4          UL also requires that any manufacturer using a UL Listing Mark also indicate the

5   country where the product was manufactured. (Saunders Decl., ¶ 17.)  In conformance with

6   that requirement, the Wilson & Cousins check valve lists the term "CHINA" on the product,

7   which is where the product is manufactured, before being shipped to Wilson & Cousins

8   facilities for final testing, approval, sale and shipping. (Saunders Decl., ¶ 17.)  Every Wilson

9   & Cousins check valve and other fire protection equipment product passes through its

10  Ontario, Canada testing facility prior to sale and shipment to a distributor. (Saunders Decl., ¶

11  17.)  Other elements of the Wilson & Cousins check valve design include, towards the bottom

12  of the check valve, a Factory Mutual approval mark, namely, a diamond symbol encasing the

13  letters "FM", with an uppercase letter "S" placed directly to its right. (Saunders Decl., ¶ 17.)

14  The "S" denotes the foundry at which the Wilson & Cousins product is manufactured, and is

15  unique to Wilson & Counsins' check valve. (Saunders Decl., ¶ 17.)  In addition, rotating the

16  valve 180 degrees, the product displays an directional water flow arrow, with the number "4"

17  placed immediately to the right, denoting the 4-inch size of the valve. (Saunders Decl., ¶ 17.)

18  Directly underneath those symbols are the characters "300 LB"—a PSI designation for the

19  product — as well as the product model number (*i.e.*, IE144T), and the year of manufacture

20  (*e.g.*, "06"). (Saunders Decl., ¶ 17.)

21         The placement and location of the UL Listing Mark, FM approval mark, CHINA

22  designation, "S" foundry designation, directional arrow, valve size indicator, PSI designation,

23  product model number and year of manufacture are unique to Wilson & Cousins check valve

24  products. (Saunders Decl., ¶ 18.)  While other check valve manufacturers may use some of

25  these approval marks, designations and the like, no others feature all of them in this

26  combination, or place them in the layout and formation Wilson & Cousins uses. (Saunders

27  Decl., ¶ 18.)  Distributors and those indirectly purchasing but directly involved in the

28  installation of fire protection equipment have come to rely upon Wilson & Cousins UL

1   Listing Mark, including the unique product control number, "27GH", as an indicator of source

2   and for confirmation that they are in fact receiving and installing high quality Wilson &

3   Cousins check valve product. (Saunders Decl., ¶ 19.)

4       **Christy's Infringing Activities**

5       Defendant T. Christy Enterprises, Inc. ("Christy") is a California corporation doing

6   business in California. According to its website, Christy represents that it is "a leading

7   provider of products to the irrigation, waterworks, light industrial, plumbing and retail

8   markets." (Saunders Decl., ¶ 20.) Christy claims to "operate as independent sales

9   representatives, manufacturers and master distributors of a variety of products and product

10  lines." (Saunders Decl., ¶ 20.) Its stated "goal continues to be a "One-Stop Shop" for the

11  wholesaler/distributor." (Saunders Decl., ¶ 20.)

12      Defendant Christy is selling check valve products which it is holding out to the

13  consuming public as a Wilson & Cousins check valve product when in fact they are not

14  Wilson & Cousins check valves. (Saunders Decl., ¶ 21, Ex. 8.) Defendant Christy is selling

15  knock-offs of the Wilson & Cousins check valve product that mimic the appearance of

16  Wilson & Cousins UL Listed check valve product. (Saunders Decl., ¶ 21.) The knock off

17  contains the identical UL Listing Mark—including the unique Wilson & Cousins product

18  control number—as well as numerous other identical markings placed in an identical or

19  virtually identical layout on the product. (Saunders Decl., ¶ 21.) The impression conveyed

20  by knock-off product sold by Defendant Christy is that it is a Wilson & Cousins check valve

21  product. (Saunders Decl., ¶ 21.)

22      Defendant Christy also posts a catalog on its webpage entitled "Christy Waterworks."

23  (Saunders Decl., ¶ 22, Ex. 9.) The catalog is located at

24  http://www.tchristy.com/catalog/200703WaterworksCatalog.pdf. (Saunders Decl., ¶ 22.) At

25  page 16 of the catalog, Christy's depicts a Wilson & Cousins check valve. (Saunders Decl., ¶

26  22.) The W&C Helmet Mark is discernable on the product shown when the depiction is

27  enlarged. (Saunders Decl., ¶ 22.) Additionally, on page 17 of the catalog, a Wilson &

28  Cousins' brass fire hose nozzle is depicted. The product is recognizable as a Wilson &

-6-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  Cousins product from the Wilson & Cousins' model number, *i.e.*, HNL-206T, which is

2  discernable on the product when the depiction is enlarged.  (Saunders Decl., ¶ 22; Ex. 10)

3       Defendant Christy is not a distributor of Wilson & Cousins products, and has not

4  purchased products from Wilson & Cousins.  Christy shows Wilson & Cousins products in its

5  catalog but actually ships "knock-off" Wilson & Cousins' products that copy Wilson &

6  Cousins unique UL Listing Mark and otherwise mimic the commercial impression conveyed

7  by Wilson & Cousins' check valve and fire hose nozzle designs.  (Saunders Decl., ¶ 22.)

8       **Irreparable Harm to Wilson & Cousins Resulting from Christy's Conduct**

9       Defendant Christy's continued use of Wilson & Cousins' trademark, trade dress

10  and/or products in its advertising and promotion, and its distribution of "knock-off" products

11  will cause irreparable harm to Wilson & Cousins unless it is stopped.  (Saunders Decl., ¶ 23.)

12  Use of Wilson & Cousins' trademark and trade dress to sell knock-off products will cause

13  immediate, irreparable harm in multiple ways.  First, Wilson & Cousins' products are utilized

14  in fire protection systems and equipment and function to protect buildings and persons from

15  damage and harm in the event of a fire.  (Saunders Decl., ¶ 23.)  If the "knock-off" products

16  are of inferior quality, or should they fail to meet certain specifications, they may fail to

17  function properly to prevent or mitigate fire damage and the harm to persons or loss of life.

18  (Saunders Decl., ¶ 23.)  In addition to the obvious irreparable harm caused by the foregoing,

19  Wilson & Cousins may face claims of liability as those who purchased such products under

20  the belief that they were purchasing a Wilson & Cousins product may bring suit or otherwise

21  seek to impose liability upon Wilson & Cousins for the perceived product failure.  (Saunders

22  Decl., ¶ 23.)  Such occurrences and claims will undoubtedly irreparably harm Wilson &

23  Cousins reputation in the industry, earned and developed after over 125 years of experience,

24  even assuming it able to thereafter establish that its product was not used, and that a "knock-

25  off" or counterfeit product failed. (Saunders Decl., ¶ 23.)

26

27

28

1

**ARGUMENT**

2   **I.   PLAINTIFF WILSON & COUSINS SATISFIES THE REQUIREMENTS FOR A**

3   **PRELIMINARY INJUNCTION**

4   The Lanham Act, 15 U.S.C. § 1116(a), grants federal courts the power to issue

5   injunctions to prevent activities that violate the rights of a trademark owner.  15 U.S.C. §

6   1116(a) (2002).  Federal courts have consistently recognized the importance of issuing

7   preliminary injunctions in Lanham Act trademark infringement and unfair competition cases.

8   *See, e.g., GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) (affirming grant

9   of preliminary injunction); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d

10   1036 (9th Cir. 1999) (reversing district court and remanding with instructions to enter a

11   preliminary injunction in favor of plaintiff); *Nova Wines, Inc. v. Alder Fels Winery LLC*, 467

12   F. Supp. 2d 965 (N.D. Cal. 2006) (granting preliminary injunction) (Patel, J.); 5 Thomas J.

13   McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:1 (2007) (receiving

14   injunctive relief is the "common historical practice" for trademark infringement or false

15   advertising).

16   **A.  THE PRELIMINARY INJUNCTION STANDARD**

17   Generally, a party seeking a preliminary injunction must demonstrate: (1) a strong

18   likelihood of success on the merits; (2) the possibility of irreparable injury if preliminary

19   relief is denied; (3) the balance of hardship favoring the moving party; and (4) advancement

20   of the public interest.  *See Earth Island Inst. v. Unites States Forest Serv.*, 351 F.3d 1291,

21   1297-98 (9th Cir. 2003) (reversing district court's denial of motion for preliminary

22   injunction).

23   The Ninth Circuit has adopted an alternate standard that it applies in trademark

24   infringement cases.  Under this standard, the plaintiff is entitled to a preliminary injunction

25   when it demonstrates *either* (1) "probable success on the merits and the possibility of

26   irreparable injury"; or (2) "the existence of serious questions going to the merits and that the

27   balance of hardships tips sharply in its favor."  *GoTo.com*, 202 F.3d at 1204-05 (quoting

28   *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)); *Honor Plastic Indus.*

1    *Co. Ltd. v. Lollicup USA, Inc.*, 462 F. Supp. 2d 1122, 1127 (E.D. Cal. 2006) (quoting

2    *Goto.com*, granting preliminary injunction); *Nova Wines*, 467 F. Supp. 2d at 972 (granting

3    preliminary injunction).

4          Importantly, irreparable injury is presumed in a trademark infringement case upon a

5    showing of probable success on the merits. *Goto.com*, 202 F.3d at 1209; *Brookfield*, 174 F.3d

6    at 1066; *Sonista, Inc. v. Hsieh*, 348 F. Supp. 2d 1089, 1094 (N.D. Cal. 2004) (quoting

7    *GoTo.com*, granting preliminary injunction) (Whyte, J.).[*] As a result, the first formulation

8    above of establishing "probable success on the merits" and "irreparable injury," is "conflated

9    into a single question of whether the plaintiff has shown a likelihood of success on the

10   merits." *Goto.com*, 202 F.3d at 1205 n.4. This standard applies regardless of whether the

11   trademarks at issue are registered or unregistered. *See Brookfield*, 174 F.3d at 1046 n.6;

12   *Honor Plastic*, 462 F. Supp. 2d at 1128.

13          Plaintiff Wilson & Cousins is entitled to preliminary injunctive relief under either of

14   the Ninth Circuit's formulations.

15          **B.  PLAINTIFF WILSON & COUSINS IS LIKELY TO SUCCEED ON THE MERITS OF ITS**

16                **LANHAM ACT CLAIMS**

17          Plaintiff Wilson & Cousins has asserted claims against Defendant under Lanham Act

18   section 43(a) for trademark infringement, trade dress infringement, and unfair competition for

19   false designation of origin or "passing off."

20          Section 43(a) of the Lanham Act protects against infringement of common-law

21   trademarks and trade dress. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)

22   (noting it is "common ground" that § 43(a) protects qualifying unregistered trademarks and

23   trade dress from infringement); *Brookfield*, 174 F.3d at 1047 n.8 ("section 43(a) protects

24   against infringement of unregistered marks and trade dress as well as registered marks"); 15

25   U.S.C. § 1125(a)(1) (2006). It is well-settled law that dealers or retailers who merely sell

26   goods bearing infringing marks are liable as infringers. *See, e.g., Levi Strauss & Co. v.*

27   *Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) (Lanham Act applies to mere offer of sale of

28   infringing goods); 4 McCarthy, *supra* § 25:27 ("It is no defense that a distributor did not

-9-

1  actually affix the infringing mark to the goods, since actual sale of the goods with an

2  infringing mark is itself infringement.").

3       Moreover, Section 43(a) also prohibits distributors from making "false representations

4  about the origin of source or manufacture of goods through the use of another's trade name or

5  trademark, either registered or unregistered." *SMC Promotions, Inc. v. SMC Promotions*, 355

6  F. Supp. 2d 1127, 1133 (C.D. Cal. 2005) (citing *Accuride Int'l, Inc. v. Accuride Corp.*, 871

7  F.2d 1531, 1534 (9th Cir. 1989), granting preliminary injunction). The Ninth Circuit has

8  specifically held that selling of a good or service of one person's creation under the name or

9  mark of another, or "passing off," constitutes a violation of section 43(a). *See Lamothe v.*

10 *Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988) (reversing summary judgment

11 for defendants).

12      To prove either trademark infringement or unfair competition under Lanham Act

13 section 43, the analysis is generally the same. *See Brookfield*, 174 F.3d at 1047 n.8

14 (explaining same analysis for infringement and unfair competition claims); *SMC Promotions*,

15 355 F. Supp. 2d at 1133 ("A section 43(a) false designation of origin claim is recognized with

16 regard to unregistered marks, as the equivalent as of a claim for trademark infringement"

17 (internal quotation marks omitted)). For section 43(a) claims, plaintiff must demonstrate (1) a

18 valid and protectable mark or dress; and (2) the likelihood of consumer confusion.

19 *Brookfield*, 174 F.3d at 1046, 1053 n.15; *SMC Promotions*, 355 F. Supp. 2d at 1133; *General*

20 *Motors*, 223 F. Supp. 2d at 1193.

21           **1.  Plaintiff Wilson & Cousins Has a Valid, Protectable Trademark, as well**

22                **as Protectable Trade Dress**

23                **a.  Plaintiff's Firefighter Helmet Mark is a Protected Trademark**

24      Since the mid 1980's, Wilson & Cousins has used the mark of a firefighter helmet

25 with stylized letters W and C as a trademark (the "W&C Helmet Mark"). (Saunders Decl., ¶

26 8.) A depiction of this mark is provided below in Figure 1, and is also attached as Exhibit 2 to

27 the Declaration of Jeffrey Saunders. Wilson & Cousins first used the mark on fire equipment

28 products sold in the U.S. by no later than 1998. (Saunders Decl., ¶ 8.)   Many of Wilson &

1   Cousins' fire protection products prominently feature the W&C Helmet Mark. (Saunders

2   Decl., ¶ 8.) Since 1998, that mark has been placed on fire hose nozzles, fire safety valves, fire

3   hose racks and reels, fire department connections, fire hose and extinguisher cabinets, fire-

4   equipment related wrenches, adapters, plugs, caps and valves. (Saunders Decl., ¶ 8.) Since

5   1998, Wilson & Cousins has manufactured and sold in the U.S. over 1,000,000 items

6   featuring the W&C Helmet Mark. (Saunders Decl., ¶ 8.)



**Figure 1.** Plaintiff Wilson & Cousins W&C Helmet Mark

12       As a trademark that is not registered on the federal register, the W&C Helmet Mark is

13   still protected under section 43(a) if it is (1) inherently distinctive or has acquired secondary

14   meaning; and (2) non-functional. *Two Pesos,* 505 U.S. at 768; 15 U.S.C. § 1125.

### i. Plaintiff's Helmet Mark is Inherently Distinctive as a Suggestive Mark

17       In assessing distinctiveness of marks, courts classify the mark or dress along a

18   spectrum of increasingly distinctive categories. *Two Pesos,* 505 U.S. at 768; *Nova Wines,* 467

19   F. Supp. 2d at 980. From weakest to strongest, it is categorized as either (1) generic, (2)

20   descriptive, (3) suggestive; and (4) arbitrary or fanciful. *Nova Wines,* 467 F. Supp. 2d at 980;

21   2 McCarthy, *supra* § 11:2. Marks that fall into the suggestive and arbitrary or fanciful

22   categories are considered inherently distinctive and are entitled to protection without a

23   showing of secondary meaning. *Two Pesos,* 505 U.S. at 768; 2 McCarthy, *supra* § 11:2.

24       Here, the W&C Helmet Mark is a suggestive mark. A suggestive mark "conveys an

25   impression of a good but requires the exercise of some imagination and perception to reach a

26   conclusion as to the product's nature." *Brookfield,* 174 F. 3d at 1058 n.19. The W&C Helmet

27   Mark depicts a firefighter's helmet with stylized letters W and C on the front. The fire helmet

28   suggests that the product that the mark is affixed to might be used for fire protection purposes,

1  yet the mark does not describe any features or qualities of the product. The "exercise of

2  imagination and perception" is required to reach the conclusion that the product it is affixed to

3  is, for example, a water valve. Thus, since W&C Helmet Mark suggests a general impression

4  of the product's purpose but does not describe or convey the nature of the product, the mark is

5  classified as suggestive. As such, the mark is inherently distinctive and entitled to protection

6  without a showing of secondary meaning.

### ii. Plaintiff's Helmet Mark is Non-Functional

8      A mark is only unprotectable for being functional if the mark "is essential to the use or

9  purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use

10  would put competitors at a significant, non-reputation related advantage." *Qualitex Co. v.*

11  *Jacobson Prods. Co., Inc,* 514 U.S. 159, 165 (1995); *Clicks Billiards, Inc. v. Sixshooters, Inc.,*

12  251 F.3d 1252, 1258 (9th Cir. 2001) (quoting *Qualitex,* reversing grant of summary judgment

13  for defendant).

14      Plaintiff's W&C Helmet Mark is in no way essential to the use or purpose of its fire

15  protection products. It does not reduce the cost of producing the product, nor does it affect the

16  integrity or quality of the fire protection product it is affixed to. Plaintiff's exclusive use of

17  the mark does not put competitors at any sort of non-reputation related advantage. Thus the

18  mark is non-functional.

19      Therefore, because Plaintiff's W&C Helmet Mark is both inherently distinctive and

20  non-functional, it is a valid and protected trademark under Lanham Act section 43(a).

### b. Plaintiff's Trade Dress is Protected

22      "A seller's adoption of a trade dress confusingly similar to a competitor's constitutes

23  unfair competition that is actionable under section 43(a) of the Lanham Act." *Vision Sports,*

24  *Inc. v. Melville Corp.,* 888 F.2d 609, 613 (9th Cir. 1989) (affirming grant of preliminary

25  injunction); *see also Two Pesos,* 505 U.S. at 763 (1992) (affirming trade dress infringement

26  judgment for plaintiff). Trade dress encompasses "the total image of a product and may

27  include features such as size, shape, color or color combination, texture, graphics or even

28  particular sales techniques." *Mattel, Inc. v Walking Mountain Prods.* 353 F.3d 792, 808 n.13

1  (9th. Cir. 2003) (quoting *Two Pesos*, 505 U.S. at 765 n.1); *Nova Wines*, 467 F. Supp. 2d at

2  975 (same).

3        Plaintiff Wilson & Cousins' check valve is dressed by the unique combination and

4  arrangement of the following elements:

5        The "UL" and "ULC" marks, placed side by side toward the top of the valve;

6        followed underneath by the upper-case characters "LISTED"; the unique product

7        control number "27GH;" and the term "CHECK VALVE". Towards the bottom

8        of the valve, a Factory Mutual approval mark, namely, a diamond symbol

9        encasing the letters "FM"; and an uppercase letter "S" placed directly to its right,

10       denoting the foundry at which the product is manufactured. Rotating the valve

11       180 degrees, the valve displays a directional water flow arrow; and the number

12       "4" placed immediately to the right of the arrow, denoting the 4-inch size of the

13       valve. Directly underneath those symbols are the characters "300 LB," a PSI

14       designation for the product; the characters "IE144T," the product model number;

15       and the year of manufacture (e.g., "06").

16  The arrangement and combination of these markings is depicted in the photographs attached

17  as Exhibit 6 to the Declaration of Jeffrey Saunders.

18        Just as with unregistered common law trademarks, Plaintiff Wilson & Cousin's trade

19  dress is protected under Lanham Act section 43(a) if it is (1) inherently distinctive or has

20  acquired secondary meaning; and (2) non-functional. *Two Pesos*, 505 U.S. at 768; *Nova*

21  *Wines*, 467 F. Supp. 2d at 975. [1]

22                    **i.  Plaintiff's Trade Dress is Inherently Distinctive**

23        Like with trademarks, courts assess the distinctiveness of trade dress by classifying the

24  dress as either (1) generic, (2) descriptive, (3) suggestive; and (4) arbitrary or fanciful. *Two*

25  *Pesos*, 505 U.S. at 768; *Nova Wines*, 467 F. Supp. 2d at 980; McCarthy, *supra* § 11:2. Dress

26  that falls into the suggestive and arbitrary or fanciful categories is considered inherently

27  _____

28  [1] As stated in these authorities, the test for infringement of trade dress includes a third element of likelihood of confusion. Likelihood of confusion is addressed in section I.B.2. of this memorandum, *infra*.

1  distinctive and is entitled to protection without a showing of secondary meaning. *Two Pesos*,

2  505 U.S. at 768; *Nova Wines*, 467 F. Supp. 2d at 975; 2 McCarthy, *supra* § 11:2. In addition,

3  when assessing trade dress, the existence of descriptive or non-arbitrary elements does not

4  eliminate the possibility of inherent distinctiveness in the trade dress as a whole. *Lisa Frank*,

5  *Inc. v. Impact Intern., Inc.*, 799 F.Supp. 980, at 988 (D. Ariz. 1992) (citing *Taco Cabana Int'l*,

6  *Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1120 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992)).

7          The trade dress of Plaintiff's check valve here is arbitrary and is thus entitled to

8  protection. Arbitrary marks or dress "have no intrinsic connection to the product with which

9  [it] is used." *Brookfield*, 174 F. 3d at 1058 n.19. Given that trade dress assesses "the total

10  image of a product," *Mattel*, 353 F.3d at 808 n.13, the trade dress here includes the overall

11  combination of (1) the numerous symbols and characters listed above that are found on the

12  valve, (2) the font used to display those characters, and (3) the precise placement of the

13  characters and symbols on the valve. Considering all of the elements as a combined whole,

14  Plaintiff Wilson & Cousin' selection and arrangement of the elements is not naturally

15  connected with the valve itself. Furthermore, even if some of the individual elements that

16  comprise Plaintiff's dress might be descriptive or non-arbitrary, this would not eliminate the

17  inherent distinctiveness of the trade dress as a whole.

18          Therefore, because the dress of Plaintiff's valve is arbitrary and thus inherently

19  distinctive, Plaintiff's trade dress is entitled to protection.

20                    **ii.    Plaintiff's Trade Dress is Non-Functional**

21          Trade dress is functional if it "is essential to the use or purpose of the article or if it

22  affects the cost or quality of the article, that is, if exclusive use would put competitors at a

23  significant, non-reputation related advantage." *Qualitex Co. v. Jacobson Prods. Co., Inc*, 514

24  U.S. 159, 165 (1995); *Clicks Billiards*, 251 F.3d at 1258. Importantly, "[t]he fact that

25  individual elements of the trade dress may be functional does not mean that the trade dress as

26  a whole is functional; rather, 'functional elements that are separately unprotectable can be

27  protected together as trade dress.'" *Clicks Billiards*, 251 F.3d at 1259 (quoting *LeSportsac*,

28  *Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985). The Ninth Circuit has emphasized that,

-14-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  "in evaluating functionality as well as other elements of a trade dress claim, it is crucial that

2  we focus not on the individual elements, but rather on the overall visual impression that the

3  combination and arrangement of those elements create." *Id.*

4      Here, analyzing the overall impression of Plaintiff's trade dress, the dress asserted is

5  not essential to the purpose of the valve.  The total combination and arrangement of the

6  symbols and characters placed on Plaintiff's valve does not make the valve cheaper to

7  manufacture, nor does it affect the quality or integrity of the valve itself.  Additionally, the

8  exclusive use of the precise combination and arrangement of these various elements does not

9  disadvantage competitors, aside from not being able to free-ride off of the business reputation

10  and goodwill Plaintiff has developed.  Lastly, even assuming *arguendo* that some of the

11  individual elements of the valve's dress might be functional, this does not render the trade

12  dress as a whole functional.  *Id.*

13           **2.   A Likelihood of Confusion Exists as a Result of Defendant's Sale of**

14                **Knock-Off Products and Use of Plaintiff Wilson & Cousins' Marks**

15      A likelihood of confusion exists "when consumers are likely to assume that a product

16  or service is associated with a source other than its actual source because of similarities

17  between the two sources' marks or marketing techniques." *Nova Wines*, 467 F. Supp. 2d at

18  972 (quoting *Nutri/System, Inc.v. Con-Stan Indus., Inc.*, 809 F.2d 601, 604 (9th Cir. 1987).

19  Actual confusion is not necessary to a finding of likelihood of confusion. *American Int. 'l*

20  *Group, Inc. v. American Int. 'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991) (reversing summary

21  judgment for defendant and vacating order denying injunctive relief); *Duncan McIntosh Co.*

22  *Inc. v. Newport Dunes Marina LLC*, 324 F. Supp. 2d 1078, 1085 (C.D. Cal. 2004) (granting

23  preliminary injunction).

24      Defendant Christy's sale of knock-off valves, as well as its use of the Wilson &

25  Cousins trademark on products pictured in its catalog to "pass off" the imitation valves,

26  presents an easy case of likely confusion.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1                 a. **Defendant Christy's Sale of Infringing Knock-Off Valves**

2                       **Causes Consumer Confusion**

3        In the Ninth Circuit, likelihood of confusion for trademark and trade dress

4 infringement is generally analyzed under the so-called *Sleekcraft* factors. *GoTo.com*, 202

5 F.3d at 1205; *Nova Wines*, 467 F. Supp. 2d at 979. These factors are: (1) the similarity of the

6 marks; (2) the relatedness or proximity of the goods; (3) the marketing channel used; (4) the

7 strength of the plaintiff's mark; (5) the defendants' intent on selecting the mark; (6) evidence

8 of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of

9 care likely to be exercised by purchasers. *Id.*; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341,

10 348-49 (9th Cir. 1979).

11      .   The Ninth Circuit has also emphasized, however, that at the preliminary injunction

12 stage, the court need not consider all the factors because the record will not likely be

13 sufficient to permit thorough consideration. *See Apple Computer, Inc. v. Formula Int.'l, Inc.*,

14 725 F.2d 521, 526 (9th Cir. 1984) (affirming grant of preliminary injunction); *Sony Computer*

15 *Entertainment America Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 984 (N.D. Cal. 1999)

16 (granting preliminary injunction) (Henderson, J.). "It is often possible to reach a conclusion

17 with respect to likelihood of confusion after considering only a subset of the factors."

18 *Brookfield*, 174 F.3d at 1054. Furthermore, where the marks and products are virtually

19 identical or "substantially indistinguishable," courts in this district have found that a "simple

20 comparison" between the products is sufficient to support a finding of likely confusion and

21 the issuance of a preliminary injunction against a defendant retailer. *Sony Computer*, 87 F.

22 Supp. 2d at 984. In *Sony Computer*, the court granted a preliminary injunction against

23 defendant retailer after conducting "simple comparison" to find that confusion was

24 "inevitable" from counterfeit electronics products sold by defendant. *Id.*,

25        Here, similarly, a simple comparison of Christy's catalog and "knock-off" valve

26 product to Wilson & Cousins' trademarks and check valve trade dress reveals an obvious

27 likelihood of consumer confusion. First, Christy features Wilson & Cousins' check valve

28 product with the W&C Helmet Mark in its catalog. (Saunders Decl., ¶ 22.) Second, when a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    sale is made, Christy actually distributes an imitation check valve product that mimics key

2    elements of Wilson & Cousins' check valve design. (Saunders Decl., ¶ 22.)  Figures 2 and 3

3    below are photographs showing different views of a valve manufactured by Plaintiff Wilson

4    & Cousins, compared to a valve sold by Defendant Christy. (Photographs authenticated in

5    Saunders Decl., ¶ 17, 21.)  The images demonstrate that the marks and dress used on the

6    products sold by Defendant are virtually identical to Plaintiff's, are placed in identical

7    locations, and are used on identical products.  The combination of Christy's use of actual

8    Wilson & Cousins product in its catalog, in conjunction with the actual distribution of

9    imitation valves that slavishly copy key and wholly unique elements of Wilson & Cousins'

10   check valve trade dress evince a strong likelihood of confusion.



**Figure 2.**  Plaintiff Wilson & Cousins' valve is on the right, compared to the infringing valve sold by Defendant Christy on the left.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION



**Figure 3.** View of the valves rotated 180 degrees of from Figure 1, showing Plaintiff Wilson & Cousins' valve is on the right, compared to the infringing valve sold by Defendant Christy on the left.

While a strong likelihood of confusion is apparent from this simple evaluation of the products and trade dress at issue, a complete analysis under the *Sleekcraft* factors is nonetheless presented for the Court's consideration.

### i.  Similarity of the Marks

"[T]he similarity of the parties' marks, is 'the most crucial factor in determining the likelihood of confusion.'" *Nova Wines*, 467 F. Supp. 2d at 979 (quoting *Newsguy, Inc. v. Yomtobian*, No. C 04-0811 CRB, 2004 WL 2944051, at *4 (N.D. Cal. Dec. 20, 2004) (Breyer, J.); *see also GoTo.com*, 202 F.3d at 1205 (noting that the similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis").  The greater the similarity, the greater the likelihood of confusion.  *GoTo.com*, 202 F.3d at 1206.

It is beyond dispute that the marks and dress at issue in this case are virtually identical. First, the Wilson & Cousins check valve shown in the Christy's catalog displays the W&C Helmet Mark.  (*See* Saunders Decl. Ex. 10.)  Moreover, as illustrated by the comparison in

1  Figures 2 and 3 above, the knock-off check valve product actually distributed by Defendant

2  uses the nearly all of the same symbols and characters as those found on Plaintiff's valve, and

3  are placed on the exact same or similar locations of the product.  As depicted in Figure 1,

4  these symbols include the "UL" and "ULC" marks, placed side by side toward the top of the

5  valve, followed underneath by the upper-case characters "LISTED," the Wilson & Cousins

6  unique product control number "27GH," and the term "CHECK VALVE, " in that order

7  respectively.  Towards the bottom of the valve is Factory Mutual approval mark, namely, a

8  diamond symbol encasing the letters "FM," with uppercase letter "S" placed directly to its

9  right.  Rotating the valve 180 degrees, the valve displays a directional arrow, and the number

10  "4" placed immediately to its right.  Directly underneath those symbols are the characters

11  "300 LB."  The fact that Christy uses the W&C Helmet Mark in the catalog and that the two

12  valves use identical marks on precisely the same locations of the valve weighs heavily in

13  favor of finding a likelihood of confusion.

### ii.  Relatedness or Proximity of the Goods

15      This factor reflects the common-sense intuition that danger of consumer confusion is

16  heightened where goods are related.  *Nova Wines*, 467 F. Supp. 2d at 980.  "Related goods are

17  generally more likely than unrelated goods to confuse the public as to the producers of the

18  goods."  *Brookfield*, 174 F. 3d at 1055.  Accordingly, "[t]he use of similar marks to offer

19  similar products … weighs heavily in favor of likelihood of confusion."  *Id.* at 1056.

20      Here, there is no doubt that the valves sold by Defendant Christy are in the same

21  product market as Plaintiff Wilson & Cousins' valve.  Both products are identical fire

22  protection check valves.   Furthermore, as demonstrated in the analysis above, the two valves

23  use virtually identical marks.  Thus, in this case likelihood of confusion "follow[s] as a matter

24  of course."  *Brookfield*, 174 F.3d at 1056.

### iii.  Marketing Channels

26      Under this factor, the court examines the marketing channels that each of the parties

27  uses to sell and advertise its goods or services.  *See Nova Wines*, 467 F. Supp. 2d at 980.

28  "Convergent marketing channels increase the likelihood of confusion."  *Official Airline*

-19-

1    *Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th. Cir. 1993) (affirming trial court finding of

2    likelihood of confusion).    Additionally, where the products are sold to the same purchasers,

3    and those products are also related and bear identical marks, such a case presents an "easy

4    analysis in terms of likelihood of confusion." *Au-tomotive Gold, Inc. v. Volkswagen of Am.,*

5    *Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006) (reversing district court's judgment in for defense).

6         Both of the parties in this case market and sell their products over the internet on their

7    respective websites. Plaintiff Wilson & Cousins markets and sells its products via its website

8    WilsonandCousins.com. (Saunders Decl., ¶ 7.)  Likewise, Defendant Christy both markets

9    the products it distributes and posts its catalogs on its website TChristys.com.  (Saunders

10   Decl., ¶ 22, Ex. 9.)    In addition, both Plaintiff and Defendant sell their products to

11   distributors and wholesalers.  (Saunders Decl., ¶¶ 5, 22.)  Thus, the parties use the same

12   marketing channels and are likely to sell to the same purchasers.  Moreover, as in *Au-tomotive*

13   *Gold*, since the products at issue are also identical products bearing virtually identical marks,

14   this case presents an "easy analysis in terms of likelihood of confusion." *Id.*

15        The analysis presented of these three *Sleekcraft* factors, the similarity of the marks, the

16   relatedness of the products, and the similarity of the marketing channels, establishes that

17   confusion is likely, if not certain, in this case.  This Court need not go further in considering

18   the remaining *Sleekcraft* factors.  *See GoTo.com*, 202 F.3d at 1207 ("This trinity constitutes

19   the most crucial body of the *Sleekcraft* analysis, and in this case, suggests that confusion is

20   likely indeed. We discuss the remaining *Sleekcraft* factors only because the parties raised

21   them."); *SMC Promotions*, 355 F. Supp. 2d at 1136 (finding likelihood of confusion and

22   declining to discuss remaining factors).  However, for sake of completeness, Plaintiff

23   addresses the remaining factors in turn for the Court.

24                    **iv.  Strength of Wilson & Cousins' Trade Dress**

25        This factor considers the strength of the plaintiff's marks, which is measured by

26   classifying the marks and trade dress along a spectrum of distinctiveness.  *Brookfield*, 174 F.

27   3d at 1058.  As discussed in section I.B.1.b., *supra*, Plaintiffs trade dress is classified as

28

-20-

1  arbitrary and thus is regarded as the strongest type of mark and inherently distinctive. Thus,

2  this factor also weighs in favor of finding likelihood of confusion.

3  **v.   Defendant's Intent in Using Plaintiff's Marks**

4      Courts assume that a defendant who intentionally attempts to confuse consumers will

5  in fact succeed in doing so, and thus, evidence of such intent is probative of likelihood

6  success. *Nova Wines*, 467 F. Supp. 2d at 982 (citing *Playboy Enters., Inc. v. Netscape*

7  *Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004)). However, the Ninth Circuit has

8  emphasized that neither intent nor knowledge is required for trademark infringement, and is in

9  fact usually of "minimal importance." *GoTo.com*, 202 F.3d at 1208.

10      In this case, preliminary examination of the facts indicates that Defendant likely

11  intended to confuse consumers and increase its own profits by selling cheaper, knock-off

12  valves, and by using Plaintiff's marks to do so. However, even if Defendant lacked intent or

13  even knowledge, a likelihood of confusion still exists, as this factor becomes of "minimal

14  importance" in such cases. *GoTo.com*, 202 F.3d at 1208.

15  **vi.   Evidence of Actual Confusion**

16      Here, at this very early stage of the litigation, Plaintiff has not yet had the opportunity

17  to develop evidence of actual confusion before petitioning this Court for preliminary

18  injunctive relief. However, the absence of such evidence by no means indicates a lack of

19  confusion. *GoTo.com*, 202 F.3d at 1208. In fact, this factor "bears little weight" as a result.

20  *Id.* Therefore, this factor is neutral in determining a likelihood of confusion in this case.

21  **vii.   Likelihood of Expansion into Other Markets**

22      This factor is "unimportant" or "irrelevant" when the products at issue are in direct

23  competition. *Brookfield*, 174 F. 3d at 1059; *Nova Wines*, 467 F. Supp. 2d at 982. Since the

24  products at issue here are the same fire protection valve, the products compete directly and

25  this factor has no bearing on the likelihood of confusion determination.

26  **viii.   Customer's Degree of Care**

27      In evaluating this factor, courts considers "the typical buyer exercising ordinary

28  caution." *Sleekcraft*, 599 F.2d at 353. "Confusion is less likely where buyers exercise care

-21-

1  and precision in their purchases, such as for expensive or sophisticated items." *Au-tomotive*

2  *Gold,* 457 F.3d at 1076.

3         Here, the valve at issue, a check valve, allows fluid to flow through it in only one

4  direction. (Saunders Decl, ¶ 16.)  This not likely to be particularly sophisticated in either

5  concept or operation to the distributors, contractors, builders, plumbers and other trades-

6  people who work with these types of products likely represent the typical purchaser of the

7  valve. (*See* Saunders Decl, ¶ 10.)  Moreover, the valve is currently sold for $182.46 by

8  Defendant Christy, and is thus not an especially expensive item. (Saunders Decl., Ex. 9, p.

9  14.)  Therefore, ordinary purchasers are not likely to exercise a high degree of care and

10 precision in purchasing the valve, leading to an even higher likelihood of consumer confusion.

11                    **ix. Weighing the Factors, Plaintiff Wilson & Cousins**

12                          **Has Established a Likelihood of Confusion**

13         As articulated above, the majority of the *Sleekcraft* factors weigh heavily towards a

14 finding of a likelihood of consumer confusion, and importantly, not a single factor weighs in

15 favor of Defendant Christy.  Confusion is a natural and predictable consequence of Defendant

16 Christy's sale of knock-off valves and the use of Plaintiff's marks to accomplish those sales.

17 Thus, Plaintiff is likely to succeed on the merits and is therefore entitled to preliminary

18 injunctive relief.

19                    **b. Defendant Christy's Use of Plaintiff's Marks to "Pass Off"**

20                          **Counterfeit Valves Causes a Likelihood of Confusion**

21         The Ninth Circuit has specifically held that selling of a good or service of one person's

22 creation under the name or mark of another, or "passing off," constitutes a violation of

23 Lanham Act section 43(a).  *See Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406

24 (9th Cir. 1988) (reversing summary judgment for defendants).  Implied passing off, equally a

25 section 43(a) violation, involves the use of a sample or photograph of the competitor's

26 product, to impliedly represent that the product being sold is made by the competitor. *H.O.*

27 *Sports, Inc. v. Earth & Ocean Sports, Inc.*, No. C00-1846P, 2001 WL 514314 at *3 (W.D.

28 Wash. Jan. 12, 2001); 4 McCarthy, *supra* §,25:7.  For example, in *H.O. Sports* , the court

-22-

1    granted a preliminary injunction against competitor defendant after examining defendant's

2    catalog and finding a likelihood of confusion existed from defendant's use of plaintiff's

3    products in its catalog to "pass off" products made by defendant.  *Id.*

4        Similarly, here, an examination of Defendant Christy's catalog, published on its

5    website TChristys.com, reveals Defendant Christy's use of Plaintiff's marks, including the

6    W&C Helmet Mark, to "pass off" knock-off check valves in violation of section 43(a).  (*See*

7    Saunders Decl., ¶ 22; Ex. 9, 10.)  These images demonstrate Defendant's use of Plaintiff's

8    mark to sell valves to customers who are actually shipped "knock-off " valves by Defendant,

9    resulting in obvious confusion.  (Saunders Decl., ¶ 22.)

10       Based on the analyses and discussion above, Plaintiff Wilson & Cousins has

11   demonstrated a likelihood of success on the merits, and irreparable injury is thus presumed.

12   Therefore, Plaintiff Wilson & Cousins is entitled to a preliminary injunction.

13       **C. IN THE ALTERNATIVE, PLAINTIFF WILSON & COUSINS HAS RAISED SERIOUS**

14           **QUESTIONS ON THE MERITS AND THE BALANCE OF HARDSHIPS TIPS SHARPLY IN**

15           **ITS FAVOR**

16       While Plaintiff's demonstration of likely success on the merits is sufficient to warrant

17   preliminary injunctive relief, injunctive relief is also warranted under the second formulation

18   of the Ninth Circuits' alternative test:  serious questions going to the merits and the balance of

19   hardships tipping sharply in favor of the plaintiff.  *GoTo.com*, 202 F.3d at 1204-05.  At a

20   minimum, the analysis of the merits provided above demonstrates that Plaintiff has raised

21   serious questions on the merits of this case.  Thus, the only remaining inquiry under this

22   formulation is the balance of the relative hardships.

23       Plaintiff Wilson and Cousins has spent more than 126 years, countless sums of money,

24   and a great deal of effort developing its manufacturing business in the fire protection industry.

25   (Saunders Decl., ¶¶ 4, 6, 15.)  Plaintiff surely suffers "immeasurable and irreparable damage"

26   to its business reputation and goodwill when distributors are able to sell identical valves with

27   nearly identical marks outside the control of Plaintiff.  *Nova Wines*, 467 F. Supp. 2d at 980

28   (finding balance sharply favored plaintiff because after 20 years in business, "plaintiff may

1   suffer immeasurable and irreparable damage if other wineries are able to sell wines with

2   nearly identical packaging outside the control of plaintiff."). Such a loss of goodwill, and

3   harm to marketing, business relationships, and relations with the public and potential

4   customers presents incalculable and irreparable adverse effects. In addition, Wilson &

5   Cousins may face claims of liability, as those who purchased such products under the belief

6   that they were purchasing a Wilson & Cousins product may bring suit or otherwise seek to

7   impose liability upon Wilson & Cousins for perceived product failure. (Saunders Decl., ¶ 23.)

8   Such occurrences and claims will undoubtedly irreparably harm Wilson & Cousins reputation

9   in the industry, even assuming it is able to thereafter establish that its product was not used.

10      Moreover, it is important to point out that Defendant's conduct grossly and recklessly

11  endangers public safety and welfare by selling knock-off fire protection products that are

12  intended to facilitate and aid fire protection in buildings of all sorts. If the knock-off products

13  are of inferior quality, or should they fail to meet certain specifications, they may fail to

14  prevent or mitigate fire damage and harm to persons or loss of life. (Saunders Decl., ¶ 23.)

15      In contrast, Defendant will suffer very little harm, if any at all, should its conduct be

16  enjoined. The only profits Defendant would lose are those that it would continue to illegally

17  reap from selling knock-off valves. Further, the products at issue here only represent a few

18  among the hundreds of products that Defendant sells through its catalogs. Thus, it is not the

19  case that Defendant's business would be shut down if it were prevented from continuing to

20  sell and market knock-off Wilson & Cousins products.

21      On balance, Plaintiff Wilson & Cousins, as well as the public, will suffer

22  exponentially more hardship if injunctive relief is not granted than Defendant would suffer if

23  the relief is granted. Therefore, under the second formulation of the Ninth Circuit's

24  preliminary injunction standard, Plaintiff is entitled to injunctive relief.

25  **II.   SCOPE OF THE INJUNCTION**

26      Plaintiff Wilson & Cousins merely seeks an injunction to prevent Defendant's

27  continued infringing conduct. The injunction Plaintiff seeks has two components: (1)

28  enjoining Defendant Christy from selling or distributing any check valve or hose nozzle

-24-

1    products not manufactured by Wilson & Cousins that feature the Wilson and Cousins UL or

2    ULC Listing Mark, the unique Wilson & Cousins Listing Mark Control number (*i.e.*, 27GH),

3    or a confusingly similar combination of approval marks and designations and other indicators

4    in the layout used by Wilson & Cousins; and (2) enjoining Defendant Christy from displaying

5    or depicting Plaintiff's Wilson & Cousins' trademarks or trade dress in its catalogs, on its

6    website, or in any advertising or promotional materials in order to sell or distribute products

7    not manufactured by Wilson & Cousins. Submitted with this motion is a proposed order that

8    is tailored to accomplish these goals.

9        This request is fully consistent with the well-established principles of preliminary

10    injunctions. The very purpose of a preliminary injunction is to preserve the status quo which

11    preceded the dispute. 5 McCarthy, *supra* § 30:50. In a trademark infringement case, the

12    status quo properly preserved by a preliminary injunction is that existing before the infringing

13    use. *See GoTo.com*, 202 F.3d at 1210. The injunction sought by Plaintiff only seeks a return

14    to the time before Defendant began selling knock-off valves and using Wilson and Cousins

15    marks in its catalogs and advertising materials to sell the knock-off valves.

16                           **CONCLUSION**

17        Plaintiff Wilson & Cousins is has demonstrated that it has valid, protected trademark

18    and trade dress, and that there is a likelihood consumer confusion from Defendant's use of

19    Plaintiff's marks sale of knock-off products. Thus, Plaintiff has demonstrated a likelihood of

20    success on the merits of it Lanham Act claims, and irreparable injury is presumed. In the

21    alternative, Plaintiff has also raised serious questions going to the merits and has shown that

22    the balance of harms sharply favors Plaintiff. Therefore, Plaintiff Wilson & Cousins is

23    entitled to a temporary restraining order and a preliminary injunction under Ninth Circuit law.

24

25    Dated: January 7, 2008                    Respectfully submitted,

26

27                         By:_____

                           DANIEL S. MASON (No. 54046)

28                         CHRISTOPHER T. MICHELETTI (No. 136446)

                           ERIC W. BUETZOW (No. 253803)